# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE FAIRCHILD CORPORATION, et al.,[1] | ) | Case No. 09-10899 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Re: Docket No. 21** |
| | ) | |

## ORDER APPROVING (A) THE SALE, FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND (B) TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors" or "Fairchild") for, among other things: (a) an order approving, among other things, (i) certain bid protections, including a break-up fee, expense reimbursement, auction procedures and overbid requirements (collectively, the "Bidding Procedures") and (ii) the form and manner of notice with respect to such procedures and the hearing to consider entry of this Order; and (b) entry of an order (the "Sale Order"), (i) approving (a) the sale of the Acquired Assets[2] (the "Sale"), free and clear of all Interests (as defined herein), pursuant to the Asset Purchase Agreement by and among Banner Aerospace Holding Company I, Inc. and certain of its affiliates (collectively, the "Sellers") and Greenwich AeroGroup Acquisition Corp. (the "Purchaser"), dated as of May [__], 2009 (as amended from time to time, the "Asset Purchase Agreement"), a copy of which is annexed hereto as Exhibit 1, in accordance

---

[1] The last four digits of Fairchild's federal tax identification number are 8587. The mailing address for Fairchild is 1750 Tysons Boulevard, Suite 1400, McLean, VA 22102. Due to the large number of Debtors in these jointly-administered cases, a complete list of the Debtors, the last four digits of their federal tax identification numbers and their addresses is not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing and claims agent at http://chapter11.epiqsystems.com/fairchild.

[2] Unless stated otherwise, all capitalized terms not defined herein shall have the same meanings as set forth in the

with the Bidding Procedures and (b) assumption and assignment of the Designated Contracts, free and clear of all Interests, to the Purchaser and (ii) granting such other and further relief as the Court deems just and proper; and upon consideration of the Declaration of Donald E. Miller, Chief Restructuring Officer of each of the Debtors, in Support of First Day Pleadings, the Declaration of Donald E. Miller dated April 15, 2009 [Docket No. 147] and the Declaration of Stephen S. Gray dated April 15, 2009 [Docket No. 146]; and notice of the Motion having been adequate and appropriate under the circumstances; and the Bidding Procedures Order [Docket No. 169] having been entered on April 17, 2009 and the Auction (as defined in the Motion) having been conducted on May 18, 2009; and the Debtors having concluded that the Asset Purchase Agreement reflects the highest and best offer for the Acquired Assets; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief requested therein and that such relief is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and upon the record in these proceedings; and after due deliberation and sufficient cause appearing therefor:

THE COURT HEREBY FINDS THAT:[3]

A.     This Court has jurisdiction to hear and determine the relief granted herein pursuant to 28 U.S.C. §§ 157(b)(a) and 1334(a). This is a core proceeding pursuant to 28 U.S.C.

_____

Asset Purchase Agreement.

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

§ 157(b)(2)(A), (N) and (O). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for the delay in the implementation of this Order and expressly directs the entry of judgment as set forth herein.

C.     The statutory predicates for the relief granted herein are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9007 and 9014 of the Bankruptcy Rules and Rule 6004-1 of the Local Rules.

D.     The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion, including, without limitation, a sound business purpose for the sale of the Acquired Assets outside the ordinary course of business.

E.     Good and sufficient notice of the Motion, the Bidding Procedures, the Auction, the Sale Hearing (as defined in the Motion), the Sale and the transactions contemplated thereby including, without limitation, the assumption and assignment of the Designated Contracts, has been given to all interested parties, and no further notice is required. A reasonable opportunity for parties in interest to object or be heard regarding the Motion, the Bidding Procedures, the Auction, the Sale Hearing, the Sale and the transactions contemplated thereby has been provided.

F.     The following parties, among others, have been provided with notice of the Sale Hearing and Auction: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to PNC Bank; (iii) counsel to the Stalking Horse Bidder (as defined in the Motion); (iv)

-3-

counsel to the Official Committee of Unsecured Creditors; (v) the Internal Revenue Service and all known state and local taxing authorities with jurisdiction over the Debtors' business and/or the assets to be sold; (vi) the Securities and Exchange Commission; (vii) the Office of the United States Attorney for the District of Delaware; (viii) counsel to the Pension Benefit Guaranty Corporation; (ix) all known creditors of the Debtors, and their counsel if known; (x) all parties that have filed requests for notice in the Bankruptcy Cases, and their counsel if known; (xii) any entities previously solicited to acquire, or known to have an interest in acquiring, the Acquired Assets; (xiii) any person or entity known to have asserted a lien or interest in all or any portion of the Acquired Assets, and their counsel if known; (xiv) all taxing authorities or recording offices known to have an interest in the relief requested; (xv) all employees affected by the relief requested, and their counsel if known; (xvi) the U.S. Department of State, Directorate of Defense Trade Controls; (xvii) the U.S. Department of Commerce, Bureau of Industry and Security; (xviii) all non-Debtor parties to Designated Contracts; and (xix) the U.S. Department of Treasury, Office of Foreign Assets Control.

G.     On April 15, 2009, the Court entered for the benefit of PNC Bank, National Association, in its capacity as agent (the "Agent") the Final Order (A) Authorizing Debtors To Obtain Interim Post-Petition Financing and Granting Security Interests and Super Priority Administrative Expense Status pursuant to 11 U.S.C. §§ 105,364(c), 364(d), and 507(b); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (C) Granting other Relief (the "Order"). The Order among other things authorized certain of the Debtors ("Borrowers") to entering into a revolving credit facility (the "Credit Agreements") with the Agent and approved the terms of the Credit Agreements. The Credit Agreements provide that upon the sale of

-4-

substantially all of the assets of the Borrowers (which is the sale contemplated by this order), the Credit Facilities will terminate and Agent is to be repaid all Obligations (as used herein, as defined in the Credit Agreements).

H.     The Debtors conducted the Sale, including selection of the Purchaser and Phoenix Banner LLC as the Back-Up Bidder (the "Back-Up Bidder"), in accordance with the Bidding Procedures.

I.     The Debtors' selection of the Purchaser and the Back-Up Bidder and their determination the Purchaser's offer to purchase the Acquired Assets pursuant to the Asset Purchase Agreement constitutes the highest and best offer constitutes a valid and sound exercise of the Debtors' business judgment.

J.     Approval of the Sale to the Purchaser pursuant to the Asset Purchase Agreement in the best interests of the Debtors, their estates, their creditors and other parties in interest.

K.     The Purchaser is purchasing the Acquired Assets in good faith on an arm's-length basis and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full benefit and protection of that provision. The Asset Purchase Agreement was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith and from arm's-length bargaining positions. None of the Debtors, the Purchaser or their respective Affiliates or Subsidiaries has engaged in any conduct that would cause or permit the Asset Purchase Agreement or the Sale to be avoided under section 363(n) of the Bankruptcy Code or has acted in any improper or collusive manner with any person. The terms and conditions of the Asset Purchase Agreement and the Sale, including without limitation the consideration provided in respect thereof, are fair and reasonable and shall not be avoided under section 363(n) of the Bankruptcy Code.

L.     The consideration for the Acquired Assets provided by the Purchaser pursuant to the Asset Purchase Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

M.     The Debtors have full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby (including, without limitation, the Ancillary Documents), and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Asset Purchase Agreement and the Ancillary Documents, except as otherwise set forth therein.

N.     The transfer of the Acquired Assets to the Purchaser pursuant to the Asset Purchase Agreement will be a legal, valid, and effective transfer of the Acquired Assets, and vests or will vest the Purchaser with all right, title, and interest of the Sellers to the Acquired Assets free and clear of all: (a) Liens (including, but not limited to, Liens asserted by the Pension Benefit Guaranty Corporation), mortgages, security interests, conditional sales or other title retention agreements, pledges, claims, judgments, demands, encumbrances; and (b) debts arising under, relating to, or in connection with any acts of the Debtors, claims (as that term is defined in section 101(5) of the Bankruptcy Code), Liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise (with respect to both (a) and (b) herein, including, without limitation, successor liability claims and claims and encumbrances (i) that purport to give to any party a right or option to effect any forfeiture, modification or termination of the Sellers' or the Purchaser's interests in the Acquired Assets or (ii) in respect of

taxes, restrictions, rights of first refusal, charges or interests of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership) (collectively, the "Interests"), with the exception of Permitted Liens, because each party with a security interest falls within one or more of the provisions of section 363(f) of the Bankruptcy Code. Such provision is necessary to maximize the value of the Acquired Assets, because a sale subject to Interests would result in a lower purchase price and be of substantially less benefit to the Debtors' estates. A sale free and clear of Interests is particularly appropriate under the circumstances because any Interests in, to or against the Acquired Assets that exists immediately prior to the closing of the Sale shall attach to the Sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtors or any party in interest. Holders of Interests, if any, are hereby deemed to be adequately protected by the availability of the proceeds of the Sale to satisfy their Interests. Thus, the proposed Sale satisfies section 363(f) of the Bankruptcy Code. Further, any holder of an Interest that received notice of the Sale and which failed to object to the Sale of the Acquired Assets free and clear of Interests is hereby deemed to consent to the Sale, thereby falling within section 363(f)(2) of the Bankruptcy Code.

O.     The Purchaser is not a mere continuation of the Debtors or their estates and there is no continuity between the Purchaser and the Debtors. The Purchaser is not holding itself out to the public as a continuation of the Debtors. The Purchaser is not a successor in interest to the Debtors or their estates or their respective Affiliates, Subsidiaries or insiders for any purpose, including, but not limited to, the purpose of asserting or assessing liability or claims against the Purchaser with respect to any action, or failure to take action, by the Sellers or their Affiliates,

-7-

5982043v6

Subsidiaries or insiders. The Sale does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtors.

P.    The Debtors have submitted facts prior to or at the Sale Hearing necessary to show the financial credibility of the Purchaser and its willingness and ability to perform under the Designated Contracts. The Sale Hearing therefore provided the Court and other interested parties the opportunity to evaluate and, if necessary, challenge the ability of the Purchaser to provide adequate assurance of future performance under the Designated Contracts, as required under section 365(b)(1)(C) of the Bankruptcy Code.

Q.    The assumption and assignment of the Designated Contracts is integral to the Asset Purchase Agreement and is in the best interests of the Debtors, their estates and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. The Debtors have cured, or have provided adequate assurance of cure of, any default existing prior to the Closing. The Cure Costs associated with the Designated Contracts, as set forth on the Notice of Proposed Assumption and Assignment sent to each respective Counterparty (and its counsel, if known), subject to any adjustments as agreed between the parties (which shall be reflected in Section 1.5(a) of the Sellers' Disclosure Schedule, attached to the final execution version of the Asset Purchase Agreement and shall be filed on the Court's docket following the Closing), are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Designated Contracts. Upon assumption, each Designated Contract will be in full force and effect and enforceable against the non-Debtor party thereto in accordance with its terms. Pursuant to section 365(k) of the Bankruptcy Code,

-8-

the Debtors and their estates shall be relieved from any liability for any breach of any Designated Contract after such assignment to and assumption by the Purchaser.

R.    Given all of the circumstances of these Bankruptcy Cases and the adequacy and fair value of the purchase price under the Asset Purchase Agreement, the proposed Sale to the Purchaser constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

S.    The consummation of the transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and all applicable requirements of such sections have been complied with in respect of the transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief request in the Motion is granted and approved, and the Sale to the Purchaser in accordance with the terms of the Asset Purchase Agreement is hereby approved as set forth in this Order.

2.    This Court's findings of fact and conclusions of law, set forth in the Bidding Procedures Order, are incorporated herein by reference.

3.    All objections to the Motion or the relief requested therein, including all objections to the Debtors' proposed Cure Amounts, that have not been withdrawn, waived or settled as announced to this Court at the Sale Hearing or by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled except as otherwise set forth herein.

4.     The Asset Purchase Agreement, the Ancillary Documents, and all other relevant documents and all of the terms and conditions thereof, are hereby approved in all respects. The Asset Purchase Agreement, the Ancillary Documents and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

5.     Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to consummate, close and perform under the Sale of the Acquired Assets to the Purchaser pursuant to the terms of the Asset Purchase Agreement, the Ancillary Documents and any Sale-related documents, including, but not limited to, the Designated Contracts, and to execute, deliver and perform in accordance with all additional instruments and documents that may be reasonably necessary or appropriate to carry out the purposes of the Asset Purchase Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of transferring the Acquired Assets to the Purchaser or as may be necessary or appropriate to the performance of the obligations contemplated by the Asset Purchase Agreement.    Without limiting in any way the foregoing, the Debtors are authorized and empowered to take such steps as are necessary to change the names of the Sellers and the captions of the Sellers' Bankruptcy Cases so as to comply with the terms of the Asset Purchase Agreement.    The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement, the Ancillary Documents or any other Sale-related document.

-10-

The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence. *(and any and all obligations under the Junior DIP Loan)*

**Free and Clear**

6.     Subject to the terms of the Asset Purchase Agreement, the Debtors shall cause the Purchaser to pay amounts due from the Debtors to the Agent in an amount equal to the Obligations due under the Credit Agreements. Upon payment in full of all Obligations, the assets are sold free and clear, pursuant to Bankruptcy Code sections 105(a) and 363(f), the Acquired Assets shall be transferred to the Purchaser and as of the Closing Date *shall be* free and clear of all Interests, including, but not limited to, successor liability claims, with the exception of Permitted Liens and Assumed Liabilities. All Interests shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Acquired Assets, subject to any and all claims and defenses the Debtors and their estates may possess with respect thereto.

7.     Except as expressly permitted or otherwise specifically provided in the Asset Purchase Agreement or this Order, the Purchaser is hereby granted a release from all claims of creditors or other parties in interest in the Debtors' Bankruptcy Cases arising prior to Closing, and all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding Interests of any kind or nature whatsoever against or in the Debtors or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Acquired Assets to the Purchaser, shall be and hereby are forever barred, estopped and permanently enjoined from

-11-

asserting, prosecuting or otherwise pursuing against the Purchaser, its property, its successors and assigns, its affiliates or the Acquired Assets, such persons' or entities' Interests (with the exception of Permitted Liens and Assumed Liabilities). Following the Closing Date, no holder of an Interest (other than holders of Permitted Liens or Assumed Liabilities) shall interfere with the Purchaser's title to or use and enjoyment of the Acquired Assets based on or related to such Interests, and all such Interests, if any, shall be, and hereby are channeled, transferred and attached solely and exclusively to the Sale proceeds.

8.    The transfer of the Acquired Assets to the Purchaser pursuant to the Asset Purchase Agreement, the Ancillary Documents and any other Sale-related documents shall not result in the Purchaser having any liability or responsibility to the Debtors or any other party except pursuant to the Asset Purchase Agreement, the Ancillary Documents and this Order.

9.    The Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Acquired Assets other than as expressly set forth in the Asset Purchase Agreement. Without limiting the effect or scope of the foregoing, except as expressly permitted or otherwise specifically provided in the Asset Purchase Agreement or this Order, the transfer of the Acquired Assets from the Debtors to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Acquired Assets) to any liability for claims (as that term is defined in section 101(5) of the Bankruptcy Code) against the Debtors or the Acquired Assets by reason of such transfer under the laws of the United States or any state, territory or possession thereof applicable to such transactions.

10.    The Purchaser is hereby further granted a release from all creditors of the Debtors and other parties in interest in the Debtors' Bankruptcy Cases for all claims with respect to

successor liability. Without limiting the effect or scope of the foregoing, upon Closing of the Sale, the Purchaser shall not have successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state or other tax liabilities, U.S. or foreign pension liabilities, liabilities arising out of export control violations, or liabilities based on any theory of antitrust, environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of the Debtors' Bankruptcy Cases, whether imposed by agreement, understanding, law, equity or otherwise with respect to the Debtors or any obligations of the Debtors, including, but not limited to, in the case of liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing or any taxes in connection with, or in any way relating to the cancellation of debt of the Sellers or their Affiliates.

11.   On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Interests on the Acquired Assets, if any, as provided herein, as such Interests may have been recorded or may otherwise exist. Upon Closing, the Purchaser shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

5982043v6

12.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Purchaser in accordance with the terms of the Asset Purchase Agreement and the Ancillary Documents.

13.     All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Purchaser or its assignee at the Closing.

14.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded to act to cancel any of the Interests.

15.     If any person or entity which has filed statements or other documents or agreements evidencing Interests with respect to the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Purchaser for the purpose of documenting the release of all Interests with respect to the Acquired Assets, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.

16.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons or entities who may be required by operation of law, the duties of their office, or

-14-

5982043v6

contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and the Ancillary Documents.

17. Nothing in this Order or the Asset Purchase Agreement, including but not limited to Section 1.4(f) of the Asset Purchase Agreement, releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.

## Assumption and Assignment of Contracts

18. The Debtors are hereby authorized to (a) assume and assign each of the Designated Contracts to the Purchaser pursuant to sections 365 and 363 of the Bankruptcy Code, and/or to transfer, sell and deliver to the Purchaser all of Sellers' right, title and interest in and to the Designated Contracts, free and clear of all Interests of any kind or nature whatsoever, and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Designated Contracts to the Purchaser. Any objection to such assumption and assignment is hereby overruled, enjoined and forever barred.

19. The Designated Contracts shall be identified by (i) the name and date of the Designated Contracts (if available), (ii) the other party to the Designated Contract, and (iii) the address of such party for notice purposes. The Debtors (i) have provided notices setting forth the amounts necessary to cure any amounts owed under each of the Designated Contracts as determined by Sellers based on Sellers' books and records, and (ii) have delineated a procedure for transferring to Purchaser the rights to any security deposits in the form of cash or letters of

-15-

credit on deposit with the other party to any Designated Contract. All nonDebtor parties to the Designated Contracts are hereby bound by the Cure Costs set forth in the notices as sent by the Debtors.

20. Pursuant to Section 5.17 of the Asset Purchase Agreement, any and all Cure Costs shall be paid within five business days after the Closing, except as otherwise agreed by the Purchaser and the non-Debtor counterparty to the Designated Contract.

21. The Purchaser shall pay all Cure Costs for each Designated Contract. The payment of the applicable Cure Costs (if any) under each of the Designated Contracts shall (a) effect a cure of all defaults existing thereunder as of the Closing Date and (b) compensate for any pecuniary loss to such non-Debtor party resulting from such default.

22. All liquidated monetary defaults, claims or other obligations of the Debtors arising or accruing under each Designated Contract prior to the assumption of such Designated Contract (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code section 365(b)(2)) shall be promptly cured by the Purchaser upon assumption and assignment as provided in Bankruptcy Code section 365(b)(1).

23. Upon the Closing, and after the payment of the relevant Cure Costs by the Purchaser: (i) all requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of the Designated Contracts shall be deemed satisfied; (ii) the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Designated Contracts; and (iii) pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall have no further liabilities to the counterparties to the Designated Contracts for breaches occurring on or after the Closing Date.

5982043v6

24.    Each non-debtor party to each Designated Contract is hereby enjoined and forever barred from asserting against the Purchaser or any of the Acquired Assets any objection to the assumption and assignment of such non-debtor party's Designated Contract.

25.    Any provisions contained in the Designated Contracts which are, or would have the effect of being: provisions which restrict "going dark"; recapture provisions; provisions which impose a fee or a penalty or a profit sharing upon assignment; provisions which seek to increase the rent or impose a penalty or to modify or terminate a Designated Contract as a result of going dark or upon assignment; provisions which directly or indirectly limit or condition or prohibit assignment; provisions that purport to make assignees subject to burdens, or rights, of third parties greater than those to which the Debtors, as tenants, are subject; continuous operating covenants; covenants that a user of any of the properties operate any particular trade name; any covenants requiring that use of the properties be similar to that of the Debtors and similar provisions contained in the Designated Contracts shall not restrict, limit, or prohibit the assumption, assignment or sale of the Designated Contracts to the Purchaser and are deemed and are found to be unenforceable anti assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

26.    With respect to each Designated Contract, on the Closing Date, subject to the Purchaser paying all Cure Costs under such Designated Contract, Sellers shall (i) assume such Designated Contract in the Bankruptcy Cases and (ii) assign such Designated Contract to Purchaser.

27.    If the Sellers have any rights or interests in insurance policies issued to Banner Industries, Inc. by any insurance company, such rights or interests are among the Excluded Assets that will not be transferred to the Purchaser as part of the Sale.

5982043v6

28.     If, at any time after the date hereof through the 90th Business Day after the Closing Date, any party to the Asset Purchase Agreement becomes aware that any Seller is a party to any Contract related to the Business that is not an Excluded Asset and is not disclosed on Section 1.5(a) of Sellers' Disclosure Schedule (each, an "Undisclosed Contract"), the discovering party shall immediately notify the other parties to the Asset Purchase Agreement in writing (the "Notification") of such Undisclosed Contract. For a period of thirty (30) Business Days after the date of Purchaser's receipt or delivery, as the case may be, of the Notification, Purchaser shall have the right, in it sole discretion, to require such Seller that is the party to such Undisclosed Contract to file one or more motions with the Court (which motion(s) shall be in form and substance reasonably satisfactory to Purchaser) seeking the entry of an Order (the "Undisclosed Contract Assignment Order"), pursuant to sections 363 and 365 of the Bankruptcy Code, to assign, transfer, convey and deliver to Purchaser such Undisclosed Contract as if it had been disclosed on Section 1.5(a) of Sellers' Disclosure Schedule, or to otherwise transfer the benefits of such Undisclosed Contract to Purchaser without any additional consideration (except for the obligation of Purchaser to pay applicable Cure Costs pursuant to Section 5.17), by written notice to such Seller or any Affiliate of such Seller acting solely on behalf of such Seller.

29.     Any Cure Costs in relation to any such Undisclosed Contract shall be paid in accordance with Section 5.17. In the event that Purchaser notifies a Seller of Purchaser's desire to assume any Undisclosed Contract, such Seller shall, as soon as practicable after receiving such notification, file with Court the motion(s) seeking the entry of the Undisclosed Contract Assignment Order. In addition, such Seller shall (i) use its reasonable best efforts to cause the Undisclosed Contract Assignment Order to become final and non-appealable and (ii) not take any action that would reasonably be expected to delay, prevent or impede the entry of, or result

-18-

in the revocation, modification or amendment of, the Undisclosed Contract Assignment Order. Any Undisclosed Contract that Purchaser elects to acquire pursuant to Section 1.5(a) of Sellers' Disclosure Schedule and for which an Undisclosed Contract Assignment Order is entered, subject to payment of all Cure Costs and becomes final and non-appealable shall constitute an Acquired Asset.

30.     Sellers shall promptly notify Purchaser in writing of any new Contract entered into by any of the Sellers after the commencement of the Bankruptcy Cases (each, a "Post-Petition Contract"). No later than the date that is the later of (i) Contract Designation Date, and (ii) ten (10) Business Days subsequent to the date that a copy of such Post-Petition Contract is delivered or made available to Purchaser, Purchaser shall notify Sellers in writing whether it will assume such Post-Petition Contract and Purchaser shall pay the Cure Costs related thereto.

31.     The Purchaser shall only pay Cure Costs for (i) Designated Contracts assumed by the Debtors and assigned to the Purchaser at Closing; and (ii) Undisclosed Contracts or Post-Petition Contracts assumed by the Debtors and assigned to the Purchaser pursuant to the procedures set forth in Section 1.5(a) and (b) of the Asset Purchase Agreement.

32.     There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Designated Contracts.

## Employees/Pension

33.     Debtors shall provide notice to the Transferred Employees prior to the Closing that any employee of Sellers who is offered and accepts employment by the Purchaser at comparable compensation levels will not be entitled to severance under Seller's practices and any employee of Sellers who is offered and accepts employment by the Purchaser at comparable

-19-

compensation levels shall be deemed to have waived any severance claims related to his or her employment with the Sellers.

34. Except as set forth in Section 3.17(c) of Sellers' Disclosure Schedule, Purchaser shall not be liable under Title IV of ERISA or the minimum funding requirements of Sections 412 or 430 of the Internal Revenue Code of 1986 (as amended), and the Purchaser shall not be liable for any liens imposed on the Acquired Assets pursuant to such statutory provisions. Without limiting the foregoing, the Purchaser shall not be liable for any liens or claims asserted by the Pension Benefit Guaranty Corporation against the Sellers, their Affiliates or Subsidiaries regarding any action, or failure to take action, with respect to the pension plans, including but not limited to, underfunding of such plans.

## Super-Priority Administrative Claims

35. In the event that the Holdback is insufficient to pay all Healthcare Claims, the obligation to pay any remaining approved Healthcare Claims and any other claims covered in Section 2.4(b) of the Asset Purchase Agreement shall constitute a super-priority administrative expense of Sellers under the Bankruptcy Code, subject to the terms of the Asset Purchase Agreement.

36. Any and all amounts owed to Purchaser under section 2.4(b) of the Asset Purchase Agreement shall constitute allowed administrative expenses of Seller under section 503(b)(1) and 507(a)(2), as applicable, of the Bankruptcy Code, payable in accordance with the terms and subject to the limitations of the Asset Purchase Agreement.

37. In the event that there are insufficient funds in the Holdback to make all or any part of the payment to the Purchaser required to be paid from the Holdback pursuant to the Asset Purchase Agreement, the unpaid portion of the Shortfall Amount shall constitute a super-priority

administrative expense of Sellers under the Bankruptcy Code, subject to the terms of the Asset Purchase Agreement.

38.    During the one hundred fifty (150) day period following the Closing, any indemnification finally determined to be due and owing under Article VII of the Asset Purchase Agreement, to the extent there are any available funds in the Holdback, the Escrow Agent shall pay Purchaser the amount of the finally determined indemnification claim from the Holdback, and to the extent all or a part thereof cannot be paid from the Holdback, the unpaid portion of the indemnification amount shall constitute a super-priority administrative expense of Sellers under the Bankruptcy Code, subject to the terms of the Asset Purchase Agreement.

39.    Subject to the Maximum Payment Amount set forth in Section 2.4(b)(vii) of the Asset Purchase Agreement, during the one hundred fifty (150) day period following the Closing, any indemnification finally determined to be due and owing under Article VII of the Asset Purchase Agreement, to the extent there are any available funds in the Holdback, the Escrow Agent shall pay to Purchaser the amount of the finally determined indemnification claim from the Holdback, and to the extent all or a part thereof cannot be paid from the Holdback, the unpaid portion of the indemnification amount shall constitute a super-priority administrative expense of Sellers under the Bankruptcy Code, subject to the cap set forth in the Asset Purchase Agreement.

## Other Provisions

40.    The consideration provided by the Purchaser for the Acquired Assets under the Asset Purchase Agreement is fair and reasonable and may not be avoided under Bankruptcy Code section 363(n).

41.    The transactions contemplated by the Asset Purchase Agreement and the Ancillary Documents are undertaken by the Purchaser in good faith, as that term is used in Bankruptcy Code section 363(m) and, accordingly, the reversal or modification on appeal of the

authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal. The Purchaser is a good-faith purchaser of the Acquired Assets, and is entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m).

42.    This Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor, all holders of any Interests (whether known or unknown) against any Debtor, any holders of Interests in the Acquired Assets, all counterparties to the Designated Contracts, the Purchaser and all successors and assigns of the Purchaser, and any trustees, if any, subsequently appointed in any of the Debtors' Bankruptcy Cases or upon a conversion to Chapter 7 of the Bankruptcy Code of any of the Debtors' cases. This Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors and the Purchaser and its successors and assigns.

43.    Any amounts payable by the Sellers pursuant to the Asset Purchase Agreement or any of the documents delivered by the Sellers pursuant to or in connection with the Asset Purchase Agreement (including without limitation, the Ancillary Documents) shall (i) constitute administrative priority expenses of the Sellers' estates pursuant to Bankruptcy Code sections 503(b) and 507(a)(1), except as otherwise specifically provided in the Asset Purchase Agreement or herein, (ii) be paid by the Sellers in the time and manner provided in the Asset Purchase Agreement without further order of this Court, and (iii) not be discharged, modified or otherwise affected by any plan of reorganization of any of the Sellers.

44.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Bankruptcy Cases, (b) any subsequent Chapter 7 case into which any of the Bankruptcy Cases may be converted, or (c) any related preceding subsequent to the

-22-

entry of this Order shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.

45.    All persons who hold Interests in (other than Permitted Liens and Assumed Liabilities) the Debtors are forever barred, estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Purchaser, its affiliates, or any of its respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the Sale.

46.    Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Order shall be effective immediately upon entry and the Debtors and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

47.    Nothing in this Order, in the Asset Purchase Agreement or in the Ancillary Documents provides for the transfer to the Purchaser of any avoidance claims (whether under Chapter 5 of the Bankruptcy Code or otherwise) of the Debtors' estates.

48.    No bulk sales law or any similar law of any state or jurisdiction applies in any way to the Sale or any transactions under the Asset Purchase Agreement.

49.    There are no brokers involved in consummating the Sale and no brokers' commissions are due.

50.    The failure to specifically include any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

51. To the extent there are any inconsistencies between the terms of this Order and the Asset Purchase Agreement (including any Ancillary Documents executed in connection therewith), the terms of this Order shall govern.

52. To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these Bankruptcy Cases, the terms of this Order shall govern.

53. In the event that, pursuant to the terms of the Bidding Procedures Order, the Back-Up Bidder becomes the Successful Bidder, then, in such instance, this Order shall be deemed to apply to the Back-Up Bidder as if it were the Purchaser of the Acquired Assets under this Order (as such Order would be modified to conform with terms of the Back-Up Bidder's asset purchaser agreement).

54. This Court retains jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Purchaser, (b) resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein, and (d) interpret, implement and enforce the provisions of this Order.

Dated: May 19, 2009
Wilmington, Delaware

UNITED STATES BANKRUPTCY JUDGE