UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                              .    Chapter 11
                                    .
The Fairchild Corporation,          .    Case no. 09-10899(CSS)
*et al.*,                           .    (Jointly Administered)
                                    .
                                    .    March 9, 2012
                                    .    11:00 a.m.
        Debtors.                    .    (Wilmington/Telephonic)
                                    .


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE


<u>APPEARANCES:</u>

For the Liquidating
Trust:                      Mary F. Caloway, Esq.
                            Buchanan, Ingersoll & Rooney, PC

                            Karen M. Borg, Esq.
                            Butler, Rubin, Saltarelli & Boyd, LLP

For the Orange County
Water District:             Michael Busenkell, Esq.
                            Matthew P. Ward, Esq.
                            Womble, Carlyle, Sandridge
                            & Rice, LLP

For Alcoa, Inc.:            Kathleen Campbell Davis, Esq.
                            Campbell & Levine, LLC

                            Scott E. Schuster, Esq.
                            Michael J. Roeschenthaler, Esq.
                            McGuireWoods, LLP

<u>VIA TELEPHONE:</u>

For the Orange County
Water District:              Michael D. Axline, Esq.
                             Miller, Axline & Sawyer

For David Sadwick:           David B. Sadwick, Esq.
                             Tatro, Tekosky, Sadwick, LLP

<u>Audio operator:</u>          Leslie Murin

<u>Transcriptionist:</u>        Reliable
                             1007 N. Orange Street
                             Wilmington, Delaware 19801
                             Telephone: (302) 654-8080
                             E-mail: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1           THE CLERK: All rise.

2           THE COURT: Please be seated.

3           MS. CALOWAY: Good morning, Your Honor.

4           THE COURT: Ms. Caloway, good morning.

5           MS. CALOWAY: Mary Caloway on behalf of the

6    Fairchild Liquidating Trust.  Your Honor, on the agenda that

7    was filed, it's indicated that items 1 through 9 are all

8    being continued to the April 2nd hearing in these cases, which

9    leaves us with one matter going forward today.  And that is

10   agenda item number 10, Orange County Water District's motion.

11   I guess I should give the podium over to Orange County's

12   counsel.

13           THE COURT: Thank you.  Mr. Busenkell, good morning.

14           MR. BUSENKELL: Good morning, Your Honor.  Michael

15   Busenkell of Womble, Carlyle, Sandridge & Rice on behalf of

16   the Orange County Water District.  With me in the courtroom

17   is Matthew Ward of Womble Carlyle and hopefully on the phone

18   is our California trial counsel, Mike Axline.  Mike are you

19   there?

20           MR. AXLINE (Telephonic): Yes.  Good morning, Your

21   Honor.

22           MR. BUSENKELL: Excellent.

23           THE COURT: Good morning.

24           MR. BUSENKELL: Your Honor, the Orange County Water

25   District, if I can just refer to them as the District, is

1  here today because we need to have our claim liquidated.  And

2  it makes sense to liquidate that claim in California.  That's

3  where the witnesses are, that's where the properties are,

4  that's where the harm occurred, that's where the co-

5  defendants are, and you already have a forum, a tribunal that

6  is familiar with the case and which the case is already

7  pending in front of.  So we want to get back there and we

8  want to liquidate our claim.  That's why we filed the motion.

9  I understand the arguments of both the Liquidating Trust and

10  Alcoa that we can't modify the plan injunction.  We would

11  submit that the plan injunction in this case doesn't prevent

12  the District from pursuing Fairchild, in name only, to get at

13  the - - it's not insurance proceeds, but as we point out in

14  our paper, Alcoa has agreed to indemnify Fairchild, has been

15  taking up the defense of this on behalf of Fairchild.  So in

16  a case like this, much like the Superior Offshore case that

17  we cite, there's no harm to Fairchild that that would be

18  protected by the plan injunction if we were allowed to

19  proceed against Fairchild in name only.  The plan injunction

20  doesn't serve any protective purposes, if we can do that.

21  And that's what we submit we should be permitted to do.  So,

22  you know, I don't know if Your Honor has any questions, but

23  we would submit that it's not a violation of the plan

24  injunction to do that.  This case should go back to

25  California to be liquidated.  It involves several co-

1    defendants, it's a complex case.  I'm not saying that Your

2    Honor isn't capable of doing it, but I suspect Your Honor has

3    more important things to do, and you have a tribunal that's

4    already familiar with the matter and it does involve

5    California law, and we think it's more appropriate for the

6    case to be liquidated - -

7            THE COURT: Well, let me ask you this.  We had

8    litigation on the . . . (indiscernible) . . . stay issue.

9            MR. BUSENKELL: Yes we did.

10           THE COURT: And I denied your stay relief motion.

11           MR. BUSENKELL: Yes you did.

12           THE COURT: And that got appealed.  To, I think

13   Judge Sleet has it at this point.

14           MR. BUSENKELL: That's correct, Your Honor.

15           THE COURT: And it's still a pending, open matter.

16           MR. BUSENKELL: That's correct.

17           THE COURT: So I was wondering, I entered a

18   confirmation order, and when I do that, the stay disappears

19   and is substituted for whatever injunction the reorganized

20   debtor can talk the Court into granting.  Your client

21   objected to the plan and then ultimately voted for the plan.

22   And voted for the plan that contains the plan injunction.  So

23   the appeal has been, I think, effectively mooted, the only

24   issue is the injunction, and the injunction is an issue your

25   client agreed to.  So it seems to me that there's a question

1   of the waiver by your client, or agreement by your client, or

2   compromise by your client that would be contrary to the

3   relief being requested in the motion.  So how do you respond

4   to that?

5          MR. BUSENKELL: Two things, Your Honor.  First, from

6   a practical standpoint, as I noted, the claim needs to be

7   liquidated.  And - -

8          THE COURT: Wasn't there, I mean, am I mistaken?  I

9   thought there was an agreed amount to the claim.

10          MR. BUSENKELL: No, there's not.

11          THE COURT: Was there an agreed treatment as a

12   general unsecured claim?

13          MR. BUSENKELL: I don't know about that, but I don't

14   know why it would be anything but a general unsecured claim.

15          THE COURT: Okay.  Keep going.  I'm sorry.

16          MR. BUSENKELL: The second point, Your Honor, is I

17   understand that the plan injunction is in place, and I think

18   everything Your Honor said is correct.  My point is, if we

19   can proceed against Fairchild, in name only, we submit that

20   that is not a violation of the plan injunction.  And we

21   believe that Superior Offshore case that we cited in our

22   reply supports that position.

23          THE COURT: Well, I mean, let's go back to

24   practical.  The whole reason this has happened is you found a

25   deep pocket that you didn't think existed.

1          MR. BUSENKELL: And, I think as we point out in our

2   papers, we would have know about that deep pocket earlier if

3   Alcoa had timely responded to discovery requests.  We just

4   recently got the indemnification agreement and became aware

5   that that indemnification agreement existed.  I think it's

6   titled a settlement agreement.  So, you know, we acted

7   promptly in that regard.

8          THE COURT: Let me look at something here.  Excuse

9   me if I'm wrong, I mean, to me - - I'm sitting here thinking

10  I don't remember this argument in your papers.

11         MR. BUSENKELL: Which argument is this?

12         THE COURT: The argument you just made, which is

13  that you have the ability under the plan to go against

14  Fairchild in name only, and that the injunction doesn't

15  prevent that.

16         MR. BUSENKELL: I think we made that argument in our

17  reply paper.

18         THE COURT: Oh, in your reply.

19         MR. BUSENKELL: In paragraph 11 of our reply, Your

20  Honor.

21         THE COURT: What's the current status of your claim

22  in the Fairchild case?  It hasn't been liquidated?

23         MR. BUSENKELL: It has not.

24         THE COURT: Is there a pending claim objection?

25         MR. BUSENKELL: There is not.  And I - -

1          THE COURT: And what did you assert your claim to

2     be?

3          MR. BUSENKELL: I believe - -

4          THE COURT: It had to - - you filed a proof of

5     claim.

6          MR. BUSENKELL: Yes we did.  I believe $25 million.

7     An unliquidated claim in an amount not to exceed $25 million,

8     I think.  I don't have it in front of me right now.

9          THE COURT: Okay.  All right.  I'll hear from the

10    other side.  Thank you.

11         MS. BORG: Good morning, Your Honor.  Karen Borg on

12    behalf of the Fairchild Liquidating Trust.  I would just like

13    to reiterate some of what you just said.  That Orange County

14    Water District voted for this plan, agreed to this plan,

15    there is a plan injunction that they're bound by.  They don't

16    have standing to modify the plan or the injunction, which I

17    think they agree.  Fairchild relied on the injunction.  They

18    have not participated in this litigation in California for

19    three years, since the automatic stay.  They have not

20    prepared the defense.  Orange County waited two years after

21    confirmation of the plan to file this motion when the trial

22    has already begun in California back in February.  With

23    respect to the argument they raise about proceeding against

24    Fairchild in name only, that was, they raised that in their

25    reply.  It's a completely different argument than they were

1    making in their original motion.  And they just filed that

2    two days ago.  I'm not quite sure what they're - - because

3    that's not what they said in their original motion.

4         THE COURT: No.  And I have to, I have to admit, I

5    mean, I did read the papers, but I missed the import of that

6    argument.

7         MS. BORG: And so from the Trust's perspective, we

8    just want to make sure that the Trust is protected here and

9    will not be prejudiced by being thrown back into this

10   litigation that it hasn't participated in in three years and

11   where all deadlines have already passed.

12        THE COURT: Well, what's your position on the

13   argument that what's really going on here is in fact

14   proceeding against, against Fairchild in name only?  Let me

15   just - - I'm trying to puzzle it through.  All right.  I let

16   them go forward, they sue you, they sue the corporation - -

17   and the Trust, obviously is in charge of dealing with that

18   - - they get a claim against the corporation for $10 million.

19   The Trust then has to turn to Alcoa to get indemnified.  And

20   Alcoa says no.  So now you're in a litigation with Alcoa.  Or

21   Alcoa says yes.  It's hard for me to get a new argument to

22   puzzle it through on the bench.  Let me ask you this.  What's

23   the provision in the plan for the payment of unsecured

24   creditors?

25        MS. BORG: Well - -

1            THE COURT: What do they get?

2            MS. BORG: The distribution?

3            THE COURT: Yeah.

4            MS. BORG: I - -

5            THE COURT: How does it work through?

6            MS. BORG: Well, in terms of their claim, which they

7    did file an unliquidated claim, we have, we still can object

8    to that claim.  And will likely do so.

9            THE COURT: But what's the recovery for general

10   unsecured creditors?  How does that, how is that determined?

11   Is it a pot plan?

12           MS. BORG: It - - well, the recovery, at this point,

13   I'm not sure what that will be.

14           THE COURT: Yeah, but what assets are available for

15   the payment of claims?

16           MS. BORG: The Trust is still in the process of

17   liquidating assets, and that's what the Trust has been

18   focused on.

19           THE COURT: Well, I don't have the plan in front of

20   me, so I'm trying to - - so I assume the administrative

21   creditors have been paid in full.

22           MS. BORG: I believe that's correct.

23           THE COURT: Okay.  Were there any, was there any

24   secured debt that had to be dealt with?

25           MS. BORG: I think that was dealt with.

1          THE COURT: Okay.  Now we've got, you're basically

2     collecting the assets as best you can into a typical pot

3     plan.  You're collecting the assets and allowed general

4     unsecured claims will share pro rata.

5          MS. BORG: That's correct.  So if you have a

6     receivable from Alcoa in whatever amount based on a verdict

7     in Orange County, and then seeking indemnification, and them

8     paying it, that asset would go into the Trust, and it would

9     be disbursed generally among all unsecured creditors.  It

10    wouldn't all go to the District.

11         MS. BORG: I believe that's correct.  But, you know,

12    since this was just raised in their reply, I'd have to say we

13    haven't been able to work through all of these issues.

14         THE COURT: Um-hum.

15         MS. BORG: And I mean, maybe we'll, if we could

16    request some additional time.

17         THE COURT: You don't need additional time.

18         MS. BORG: I'm not quite sure how this would all

19    play out.

20         THE COURT: Yeah.  Let me hear from Alcoa if I

21    could.

22         MR. SCHUSTER: Good morning, Your Honor.  Scott

23    Schuster on behalf of Alcoa.  Judge, first I'd like to just,

24    just briefly touch on a couple of the factual issues that the

25    District has raised that I don't believe are entirely

1   accurate.  First and foremost, there's, the District has

2   suggested that Alcoa somehow withheld certain documents,

3   particularly this 2007 agreement that they attached to their

4   reply, and that that explains the reason that the District

5   hasn't come forward previously.  We don't believe that's

6   necessarily germane to this issue, but to the extent that it

7   is, Alcoa believes that it actually did turn over certain

8   documents in August of the previous year, 2011, which showed

9   an indemnification obligation from Alcoa to Fairchild.  So to

10  the extent that the District is claiming that it was

11  surprised in January by this obligation, we don't believe

12  that's correct.  To the extent the Court believes that's a

13  germane issue, I think it's a dispute that would require an

14  evidentiary hearing.  Again, I don't think we need to get

15  there.  The second factual issue that I'd like to discuss

16  briefly is the District's suggestion that because Alcoa is a

17  defendant in the State Court litigation, it can simply pick

18  up the documents that it currently has and use the experts

19  that it currently has in that litigation to just defend

20  Fairchild two weeks from now at trial.  To back up a little

21  bit, Your Honor, this litigation stems from a couple of

22  parcels out in California.  One of which was owned by

23  Fairchild for approximately 20 years, I believe.  Alcoa

24  purchased that property I believe in 2002, owned it for a

25  matter of months, and then my understanding is transferred it

1  elsewhere.  So Alcoa's liability very well may be limited,

2  the direct claims against Alcoa may very well be limited

3  simply to a matter of months, or even a couple of years,

4  perhaps.  Fairchild's liability, on the other hand, spans,

5  potentially, decades.  This litigation has produced millions

6  of pages of documents that our California counsel tells us

7  spans terabytes and dozens of terabytes worth of data.  Our

8  experts, since the petition date, Alcoa's experts, have

9  viewed this case as a defense of Alcoa's direct liability.

10  They have not been reviewing these documents and analyzing

11  these documents from the perspective of Fairchild.  So it's

12  not, it's not simply that Alcoa's experts can review the

13  documents in the next couple of weeks and perform an

14  analysis.  It would simply be impossible, number one.  But

15  number two, the depositions that Alcoa has taken throughout

16  the past four or five years have simply focused on Alcoa's

17  ownership of the property.  We focused on the time period

18  that Alcoa owned the property.  They didn't touch on this 20

19  year period where Fairchild was potentially contaminating the

20  land.  So the idea that Alcoa could simply defend itself and

21  defend Fairchild, it's an untenable argument, Your Honor.

22  That being said, I think, you know, I would echo the Court's

23  comments related to the plan injunction.  This is a final,

24  non-appealable order that the District essentially consented

25  to by voting for the plan.  It's disingenuous for the

1    District to come in two years later, after Alcoa and the

2    Debtor and the Liquidating Trust relied on that confirmation

3    order, as did the State Court.  And nothing the District did

4    during those two years would have suggested for any reason

5    that Alcoa should not have relied on this injunction.  They

6    relied on it for two years, they took no depositions, they

7    performed no investigation, they did nothing to defend

8    Fairchild's potential liability.  And then after all of that,

9    after discovery is closed, after the dispositive motion

10   deadline has passed, after trial has commenced, then they

11   come in and say, Well we think Fairchild should be a part of

12   this action.  We think it's inequitable, we think the case

13   law is very clear that this confirmation order cannot be

14   modified under these circumstances.  It simply cannot.  It is

15   a final judgment on the merits.  The District had the

16   opportunity to object to the confirmation order if they

17   didn't like the injunction.  They had an opportunity to

18   appeal the confirmation order if they didn't like the

19   injunction.  They chose not to do so.  Everybody since then

20   has relied on the confirmation order, it would be unfair and

21   inequitable to now lift the injunction.  For those reasons,

22   Alcoa believes the motion should be denied.  And I'm happy to

23   answer any questions Your Honor may have.

24           THE COURT: I have no questions.

25           MR. SCHUSTER: Thank you, Your Honor.

1          THE COURT: You're welcome.  Mr. Busenkell, reply?

2          MR. BUSENKELL: Your Honor, if I could just respond

3    to a couple of the comments that were made.  First, the

4    Liquidating Trust, counsel for the Liquidating Trust simply

5    said that they want to make sure that the Liquidating Trust

6    isn't prejudiced.  Just a couple observations.  At least in

7    the State Court action, Alcoa has recognized, acknowledged

8    it's indemnification obligations.  There's no dispute

9    regarding the fact that it has to indemnify the Trust.  And

10   up until the stay, Alcoa had defended the, had defended

11   Fairchild.  But I don't think there's any potential prejudice

12   to the Liquidating Trust in that regard.  I'm not sure what

13   the concerns are there.  With respect to the comments that

14   Alcoa made, with the disclosure of the indemnification

15   agreement, you know, I don't know if Mr. Axline on the phone

16   has anything to add to that.  I can't speak to, you know,

17   what had been produced and what wasn't produced.  I just know

18   that I was advised that we only received the indemnification

19   agreement very recently.  And I think the argument that Alcoa

20   is making strikes me as a straw man argument.  I was not

21   suggesting that Alcoa can just simply pick up and defend a

22   lawsuit that's, you know, scheduled to commence in a week, or

23   what have you.  I, you know, I understand that they are

24   separate time periods, separate properties, what have you.

25   So I, it's not the argument that we were, and I just wanted

1   to clarify that for the Court.

2           THE COURT: All right.

3           MR. AXLINE (Telephonic): Your Honor, this is Mike

4   Axline, could I be heard briefly?

5           THE COURT: Yes.  Yes.

6           MR. AXLINE (Telephonic): I think Mr. Busenkell may

7   have with him a copy of a motion *in limine* that was filed on

8   March 1st by Alcoa in the State Court litigation.  Mike, do

9   you have that with you?

10          MR. BUSENKELL: Yes, I do.

11          MR. AXLINE (Telephonic): I asked him to bring it to

12  the hearing, because in this motion, Alcoa itself described

13  the 2007 settlement agreement as an insurance contract.  And

14  I'm quoting from page 8 of the motion in which Alcoa says,

15  "The 2007 settlement agreement is thus like that most common

16  of indemnity agreements, an insurance contract."  And the

17  motion was filed, or at least has on its heading, Alcoa's

18  trial counsel, who represents that he is the attorney for

19  both Alcoa Global Fasteners and the Fairchild Corporation.

20  We have been asking, not only Alcoa but also Fairchild,

21  whether there was any insurance coverage for Fairchild and

22  have been being informed that there was not.  When we

23  received a copy of this agreement in January, we realized for

24  the first time that there in fact was.  And that, of course,

25  changed the view of the District.  The properties at issue in

1    the California litigation are now, well one of them is now

2    owned by Alcoa and Alcoa was defending Fairchild up until the

3    stay went into effect, but more importantly, as part of its

4    ongoing defense in the current litigation is responding to

5    our expert's review of the entire history of the use of alto

6    (phonetic) organic chemicals at those properties.  Not just

7    the period of time in which Alcoa owned or operated at the

8    properties.  So although I think obviously Alcoa can make

9    whatever timing arguments it wishes to to the Court of

10   California, should we be allowed to proceed nominally against

11   Fairchild, but really against Alcoa, it's not exactly

12   starting from ground zero.  Those are the points I wanted to

13   make.

14            THE COURT: All right.

15            MR. SADWICK (Telephonic): Your Honor?  This is

16   David Sadwick.  I'm counsel for Alcoa in the California

17   action.

18            THE COURT: Um-hum.

19            MR. SADWICK (Telephonic): And if I may just be

20   heard briefly.

21            THE COURT: Sure.

22            MR. SADWICK (Telephonic): I have, again, just had a

23   very short period of time to consider these issues, because

24   they were raised for the first time in the reply, and I'll

25   leave it to the Court to decide whether that suggests whether

1    this was really the motivation for the motion that was

2    brought before this Court.  I would also suggest, as the

3    Court can no doubt draw the inference itself, the passage

4    from that motion *in limine* that was read to the Court is

5    likely out of context and the idea that the 2007 agreement is

6    an uncontested insurance policy-type document or other

7    complete indemnification that would not have to be sorted out

8    at length is also a gross oversimplification.  And finally, I

9    would note that counsel for Alcoa has made very clear in all

10   of its filings since 2009 that it is not acting on behalf of

11   the Fairchild Corporation as Debtor or as Liquidating Trust.

12   That motions that could have been brought on behalf of

13   Fairchild Corporation absent the bankruptcy petition in 2009

14   have not been brought.  And that it's really not appropriate

15   for Mr. Axline to say what Alcoa's experts have or haven't

16   done, or what assumptions they have or haven't made with

17   regard to the property and how to view the property in light

18   of the stay, which has been in effect in the California

19   action with regard to the Fairchild Corporation.  And that

20   those experts have not been deposed, up until this point, but

21   they are going to be deposed within a matter of days.  So

22   it's really obviously more than a difficult posture to be in

23   for us as Alcoa's counsel to try to contemplate how our

24   experts might adjust their position, depending on how this

25   motion is decided.

1          THE COURT: Thank you.

2          MR. SADWICK (Telephonic): If there are no further

3     questions by the Court, that's all I had to add.

4          THE COURT: Okay.  Now, Mr. Busenkell, I understand

5     from the Debtors' response, or the Liquidating Trust's

6     response to be more accurate, if you look at paragraph 8 on

7     page 4 - -

8          MR. BUSENKELL: Of what document, Your Honor?

9          THE COURT: The Debtors', or the - - I'm going to

10    say Debtor, but I mean the Trust's response, Liquidating

11    Trust's response.  And I'm looking at the very first line of

12    paragraph 8 of the quoted material.  Which is that "The

13    District's" - - that's your client's - - "motion for

14    estimation of claim is uncontested by Fairchild and granted."

15    Now unfortunately, I don't have the actual confirmation order

16    in front of me.  But if you look at 502, 506, hang on.  I'm

17    no good with my alphabet numbers.  Yeah.  502(c).  And it

18    says, under, "There shall be estimated for purpose of

19    allowance under this section", and then it goes through

20    continues, contingent, or unliquidated claims.  So you sought

21    an estimation of an unliquidated claim that the Debtor didn't

22    object to.  Am I wrong, Ms. Caloway?

23         MS. CALOWAY: Your Honor, I think that was just for

24    voting purposes.

25         THE CLERK: Do you have a Blackberry with you?

1          MR. BUSENKELL: Oh, I'm sorry.

2          THE COURT: If you have a Blackberry, if you could

3   put it below the table?  Otherwise we get interference every

4   time it updates.  Well wait a minute.  You know, the next - -

5   it says, "Notwithstanding any contrary provision in the plan

6   or this order, any estimation of the claim" - - does that

7   mean future estimation?  "...after notice and a hearing shall

8   constitute a filed determination of the amount of such claim

9   for the sole purposes of implementing and affecting

10  distributions."  And again, I don't have the order in front

11  of me, but it sounds like, as I look at it - - maybe I'm

12  wrong.  It sounds like their motion for estimation was

13  uncontested, so assume that was for voting purposes only.

14  But then it goes on to say, "Any estimation of the claim by

15  the Court, after notice and a hearing, shall constitute a

16  final determination of the amount of such claim."  So I take

17  it that's contemplating a second proceeding?

18          MS. CALOWAY: I think that's right, Your Honor.

19          THE COURT: Okay.  Ms. Caloway?

20          MS. CALOWAY: I wasn't - - . . . but I think there

21  were two different concepts.  There's estimation for voting

22  purposes, which you'll sometimes see people seek either

23  estimated for a dollar or for - -

24          THE COURT: Yup.

25          MS. CALOWAY: - - in this case, it was a dollar

1    amount.  And then later, if there are reasons which, for

2    which a claim cannot be fixed to a specific dollar amount,

3    you'll see an estimation for allowance and distribution

4    purposes.

5            THE COURT: Okay.

6            MS. CALOWAY: But they are two separate estimations.

7            THE COURT: In this order.  And so the first, the

8    former happened by agreement, but the latter has not

9    occurred.

10            MS. BORG: That's right.

11            MS. CALOWAY: The Court will confirm it.  Yeah, the

12    Trust does not understand that it has agreed to an estimation

13    of the District's claim for distribution purposes.

14            THE COURT: Okay.

15            MR. BUSENKELL: That would be our understanding as

16    well, Your Honor.

17            THE COURT: Well, I think you've admitted, Mr.

18    Busenkell, or not admitted, but I think you would agree with

19    me that it would be unrealistic to assume that were I to

20    grant your motion, trial on the merits would be able to occur

21    starting the end of this month in California against the

22    Trust.

23            MR. BUSENKELL: That would be an unreasonable

24    position for us to take.

25            THE COURT: All right.  Well tell me, Mr. Busenkell,

1   what if I overrule your motion or decline to grant your

2   motion, what would be the results to your client that would

3   be not helpful?  Your alternative was you would have to come

4   in here and ask for estimation of the claim - -

5        MR. BUSENKELL: I think there are a couple different

6   ways that it would play out.  Either the claim is going to

7   get adjudicated here, in this Court, which we think would be

8   a bad result.  Not because Your Honor is not completely

9   capable of hearing it, but because there's already a tribunal

10  that's prepared to hear this case, who's already familiar

11  with the facts, all the witnesses out there, there are co-

12  defendants out there.  It's just a more suitable forum to

13  have the matter heard out there.

14       THE COURT: Well, and you'd only get, and frankly,

15  you're not going to go to all that expense unless there's

16  more assets that siphon into the estate, or will siphon into

17  the estate as a result of this.

18       MR. BUSENKELL: As a result of what?

19       THE COURT: You wish to pursue Fairchild because

20  they had the property for 20 years.  If there's damages,

21  almost certainly they're liable.  And Alcoa has an obligation

22  to indemnify them.  So what you're doing is, like you said,

23  you're going to sue Fairchild in name only, and assuming you

24  win something, you'll then have a claim, liquidated claim

25  against the Trust.  And then Trust will then seek

1    indemnification from Alcoa.

2         MR. BUSENKELL: I think that's correct.

3         THE COURT: And that puts money in the Trust's pot

4    that you would go after, and it would be different money than

5    direct liability by Alcoa, it would be, in effect, derivative

6    liability by Alcoa for the indemnification.

7         MR. BUSENKELL: That's right.  I mean, there are

8    separate claims against Alcoa - -

9         THE COURT: Right.  You have individual claims

10   against Alcoa.  I understand.  But that kind of puts, that

11   puts Fairchild in the middle of this complex litigation,

12   really for no purpose.  The issue becomes what claims do you

13   have against Alcoa.  Either by indemnification, getting the

14   results of the indemnification.  But your argument is that

15   the whole reason you have to come here today is that they hid

16   the ball on the indemnification agreement.  So why wouldn't

17   it be easier, if you will, to go after Alcoa directly for the

18   Fairchild damages based on the fact that they either

19   constructively or deliberately defrauded you from making or

20   proceeding against the bankruptcy estate that's now three

21   years post-confirmation?

22        MR. BUSENKELL: Your Honor, to be frank, I'm not

23   sure whether or not we could pursue that kind of claim under

24   California State Law.  I'm not - -

25        THE COURT: And that's, I think the motion *in limine*

1    kind of touches on that a little bit.  I guess.  Because the

2    argument by Alcoa there is that the District does not have a

3    direct cause of action against Alcoa because it's an

4    indemnity agreement as opposed to some broader assumption

5    agreement or settlement agreement.

6           MR. BUSENKELL: I think that's what they say.  I

7    don't know if that's, my point is I'm not sure if that's

8    correct or not as a statement of law.

9           THE COURT: All right.  Any, I'm going to take a

10   recess.  Any last comments before I take the recess?  Okay.

11   I hear none.  I'll be out in a bit.  Not too long.

12       (Whereupon at 11:44 a.m. the hearing in this matter was

13   concluded for this date.)

14       (Whereupon at 12:00 p.m. the hearing in this matter

15   reconvened and the following proceedings were had:)

16           THE CLERK: All rise.

17           THE COURT: Please be seated.  Okay.  The short

18   answer is I'm going to deny the motion.  Let me see if I can,

19   see if I can explain it as best I can.  Obviously the

20   District has been involved in the Fairchild bankruptcy case

21   for some time.  They filed a stay relief motion which this

22   Court ruled on, and subsequently they appealed the case to

23   the District Court where it sits.  They objected to the

24   disclosure statement and the liquidating plan.  Ultimately,

25   they reached an agreement in connection with the terms of the

1    plan and order, and the confirmation order, and actually

2    voted in favor of the plan.  Of course, this entire time, for

3    the last ten years, they've been pursuing litigation in

4    California in connection with environmental contamination of

5    the Orange County water supply. The plan that they supported

6    included a plan injunction which, I think clearly by its

7    terms, prohibits the District from taking further action in

8    California, or any other Court, to collect or to determine

9    liability of the District's claim against Fairchild.  That

10   claim, to the extent it ever becomes an issue, is, under the

11   plan, this Court's responsibility to determine.  And of

12   course, this Court has the ability or power to abstain from

13   hearing arguments in connection with litigation, if that

14   makes more sense.  So as it was sort of set out, Fairchild is

15   out of the picture.  There's a District Court - - excuse me.

16   The District has brought litigation in California that Alcoa

17   is defending on Alcoa's behalf.  Fairchild is not

18   participating in, and that case has moved all the way to the

19   beginning of trial.  And that trial will continue, I think,

20   at the end of March.  So what's in front of the Court today?

21   Well, the game changer, which is disputed as to when it

22   occurred and what the motive would be for it, etcetera,

23   etcetera.  But the game changer is the District's discovery

24   of the fact that Alcoa has allegedly agreed to indemnify

25   Fairchild for Fairchild's damages.  That creates an incentive

1  on the District's behalf to continue its lawsuit against

2  Fairchild, because there's now a chance of collecting 100%,

3  or some amount close to it, for their claim against

4  Fairchild, because Fairchild will have some assets, and as

5  opposed to pennies or zero on the claim if they pursued it,

6  and there was no indemnification liability.  It raises all

7  sorts of interesting issues if I were to allow the lawsuit to

8  go forward in California.  For example, Fairchild would

9  presumably have to defend itself.  And I'm, I haven't, to a

10 certain extent I'm operating the dark, of course, because I

11 haven't been provided with all of the documents ahead of

12 time.  But I'm pretty doggone sure that the indemnification

13 agreement doesn't allow Fairchild to just roll over and allow

14 $20 million of liability against it.  So let's assume

15 Fairchild has to defend, and defend successfully.  Great.

16 Now they've . . . up $2 million worth of attorney costs.

17 They have no liability, but . . . indemnification claim

18 either.  So the estate, by defending and successfully

19 defending its lawsuit is now extremely harmed, because it has

20 to eat 2, 3, $4 million of attorney's fees.  If they win,

21 i.e. - - excuse me, if the estate loses, i.e. there's some

22 liability, the estate is now under the obligation to sue and

23 litigate with Alcoa on indemnification.  And again, what if

24 they lose?  Well, now they've got an even worse situation.

25 They've got a big claim against it, and no assets, and

1   they've lost $2 million in attorney's fees.  So the best of

2   all worlds, of course, would be that the, Fairchild would

3   find itself liable, it would then successfully incur, or

4   successfully collect indemnification, and that money that it

5   collected for indemnification, and this would be the best

6   part, I guess, for this situation, would go for the benefit

7   of all general unsecured creditors.  That's a lot of

8   connecting the dots, thinking through things, money spent,

9   money spent just to figure out where to spend the money, how

10  to defend, etcetera, etcetera, with a case that's already

11  going forward.  So it just, as a practical standpoint,

12  there's no question that this Court would not allow Fairchild

13  to get sucked into substantively defending itself at a trial

14  that's already commenced.  I think it's critical in this

15  Court's determination how to proceed by the fact that the

16  District voted for the plan.  They voted for the plan in one

17  of two situations.  They voted for the plan ignorant of the

18  Alcoa indemnification claim or they voted for the plan

19  knowing of the Alcoa estimation claim.  If they voted for the

20  plan knowing of the indemnification, clearly they would not

21  have a right, at this point, to cry foul.  They had full

22  information, they voted for the plan, the plan injunction

23  clearly prohibits them from proceeding against the Debtor.

24  Okay?  So if they voted for the plan without knowledge of the

25  indemnification claim, you run into two situations.  All

1  right, if they didn't have knowledge, the question is why

2  not.  Well, it could be that Fairchild knew and didn't tell

3  them, or it could be that Fairchild, or that Alcoa knew and

4  didn't tell them.  Well, again, if, it really only comes down

5  to whether, because there are no assets, necessarily, but it

6  really comes down to whether Alcoa fraudulently,

7  constructively fraudulently, breach of contract, I don't know

8  what the theory would be.  And at that point, Alcoa - -

9  excuse me.  At that point, the District would have a direct

10 claim against Alcoa, perhaps, for its losses against, by not

11 being able to pursue against the estate.  My point there

12 being denying this motion doesn't necessarily put the

13 District in a situation where it can't recover its damages.

14 It just can't recover those damages against the estate.  When

15 was this plan confirmed?  Ms. Caloway?  2009, right?

16         MS. CALOWAY: January, 2010.

17         THE COURT: 2010, all right.  Well, two years later,

18 two years of litigation, two years of trial prep that

19 Fairchild would have to get caught up on and they're doing it

20 on a wing and a prayer that they'll get paid for it.  It's

21 just simply too late in connection with this bankruptcy

22 estate.  There has to be, it's a huge public policy.  There

23 has to be finality in bankruptcy Court orders, especially

24 confirmation orders.  Because actions are taken or not taken

25 based on the provisions of that order.  This is a slightly

1    different case, it's a liquidating case, but consider the,

2    literally, billions of dollars that are dealt with, quite

3    often, in Bankruptcy Court based on the finality of the

4    confirmation order.  It's not something to be tossed aside

5    lightly, whatsoever.  The injunction language is imperative

6    to be able to enforce the provisions of a confirmation order,

7    also not to be tossed aside lightly.  And a creditor has a

8    duty, doesn't have a duty, but a creditor who decides to vote

9    in favor of a plan has to be held to that.  Otherwise, all

10   the work that goes into getting to confirmation of a plan of

11   reorganization is just a waste of time.  Because there will

12   always be facts.  Every case is special.  And there will

13   always be facts where people can argue, Well, Judge, I know I

14   did, I know I voted for the plan.  I know I knew, you know.

15   But, and then we have endless litigation.  So the burden on

16   the District is extremely high if they want to upset the

17   applecart.  And the argument they have on why they should be

18   allowed to is not particularly persuasive.  Certainly not

19   overwhelmingly persuasive that it would justify taking a very

20   out of the ordinary, extreme measure by modifying the plan

21   injunction.  So . . . burden, it would enters, the Court has

22   entered the order not allowing relief from the injunction.

23   Abstention, at least at this time, is not appropriate.  And

24   the reason I say say at this time it's not appropriate, it is

25   possible in the future that in the context of the plan we

1   might have a litigation over the amount of the District's

2   claim.  That's what they agreed to.  They agreed to a

3   bankruptcy claim process for determining the amount of their

4   claim.  At that time, if that happens - - it may happen, it

5   may not happen, we'll see.  But if that happens, the Court

6   will at that time decide what to do about that litigation.

7   Whether to have it heard here.  Whether to abstain and have

8   it heard someplace else.  Whether to withdraw it up to the

9   District Court.  There are a lot of different things that

10  could happen.  This Court could have - - remember, claim

11  objections, claim determination is a summary proceeding.  I

12  don't have to have a 20 day trial on a, to determine a claim.

13  It may that it happens here.  We'll see.  But that's down the

14  road.  For today's purposes, I'm denying the motion to alter

15  the plan injunction, or relief from the plan injunction with

16  prejudice, and I'm denying the abstention without prejudice.

17  But, it would be, the abstention issues would be limited to

18  dealing with what to do in the context of a claim objection

19  process.  Did I say everything?  I think that's it at this

20  point.  So the Court will prepare an order.  Okay?

21          MS. CALOWAY: Thank you.

22          THE COURT: All right.

23          MS. BORG: Thank you, Your Honor.

24          THE COURT: Thank you.  We are adjourned.

25          (Whereupon at 12:14 p.m. the hearing in this matter was

1   concluded for this date.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18          I, Jennifer Ryan Enslen, approved transcriber for

19   the United States Courts, certify that the foregoing is a

20   correct transcript from the electronic sound recording of the

21   proceedings in the above entitled matter.

22

23    _/s/Jennifer Ryan Enslen_                    _March 17, 2012_
      Jennifer Ryan Enslen
24   43 Bay Boulevard
     Newark, DE 19702
25   (302)836-1905